IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:15CR69-HTW-FKB-1

SAM WAGGONER

**PLEA HEARING**

BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
AUGUST 21ST, 2015
JACKSON, MISSISSIPPI

APPEARANCES:

FOR THE GOVERNMENT:   MR. DARREN J. LAMARCA
                      MR. J. SCOTT GILBERT

FOR THE DEFENDANT:    MR. NICHOLAS R. BAIN

REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR
              Mississippi CSR #1253
_____

501 E. Court, Suite 2.500
Jackson, Mississippi  39201
(601) 608-4187

```
 1            THE COURT:  You may be seated.  Call your case,
 2   please.
 3            MR. LaMARCA:  Your Honor, the case before the court is
 4   United States v. Sam Waggoner, criminal number 3:15cr69.
 5   Mr. Waggoner is present with his attorney, Nick Bain, and is
 6   present for an intent to plead guilty to an information
 7   charging bribery.
 8            If I may, your Honor, with me at counsel table is
 9   Scott Gilbert, assistant United States attorney.  And inside
10   the bar on the government's behalf are two FBI agents, Molly
11   Blythe and Tye Breedlove.  Thank you.
12            THE COURT:  Thank you.  Mr. Bain.
13            MR. BAIN:  Yes, your Honor.
14            THE COURT:  You're here with your client Mr. Sam
15   Waggoner?
16            MR. BAIN:  Yes, sir.
17            THE COURT:  And I understand your client wishes to
18   enter a plea of guilty to a criminal information.  Is that
19   correct?
20            MR. BAIN:  That's correct, your Honor.
21            THE COURT:  Will you all approach the podium, please.
22       (COMPLIED WITH REQUEST)
23            THE COURT:  Good afternoon, Mr. Waggoner.
24            THE DEFENDANT:  Good afternoon, sir.
25            THE COURT:  I understand you wish to enter a plea of
```

1    guilty to the criminal information.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  I need to ask you a number of questions

4    which must be answered truthfully and under oath.  So at this

5    time I'll have you sworn.

6              THE DEFENDANT:  Yes, sir.

7         (OATH ADMINISTERED TO THE DEFENDANT)

8              THE COURT:  Now, do you understand that you have now

9    been sworn and that if you give untruthful answers to any of my

10   questions, that you could be prosecuted for perjury?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  You understand that perjury is lying under

13   oath.

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now, how old are you?

16             THE DEFENDANT:  61.

17             THE COURT:  How much schooling have you had?

18             THE DEFENDANT:  Bachelor of science from Delta State.

19             THE COURT:  All right.  And that means that you can

20   read and write.

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Have you taken any drugs of any type,

23   prescription drugs or nonprescription drugs, or consumed any

24   alcoholic beverages within the last 24 hours?

25             THE DEFENDANT:  Yes, sir.

1        THE COURT:  What did you take?

2        THE DEFENDANT:  Prescription medication.

3        THE COURT:  And what is that medication?

4        THE DEFENDANT:  It's quite a lot.

5        THE COURT:  Do you have a list?

6        THE DEFENDANT:  Ms. Sullivan has it.

7        THE COURT:  Okay.  And with regard to the medications

8   that you're taking, do any of those medications affect your

9   ability to understand what is going on here today?

10        THE DEFENDANT:  No, your Honor.

11        THE COURT:  Are any of those medications ones that

12   would cause you to experience any drowsiness?

13        THE DEFENDANT:  No, sir, your Honor.

14        THE COURT:  Or any hallucinations?

15        THE DEFENDANT:  No, your Honor.

16        THE COURT:  So how do those drugs affect you?  Just

17   describe in general what effect those drugs have on you.

18        THE DEFENDANT:  Like three blood pressure, thyroid,

19   arthritis, cholesterol.

20        THE COURT:  Are any of those drugs for any mental

21   disability?

22        THE DEFENDANT:  No, your Honor.

23        THE COURT:  So, then, those drugs do not alter the way

24   you comprehend reality?

25        THE DEFENDANT:  That's correct.  Yes, sir.

1          THE COURT:  Now, have you ever been treated by any

2     doctor, psychiatrist or psychologist or in any hospital, clinic

3     or mental institution for any mental disease or disorder?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  In order to enter a valid plea today you

6     must be mentally competent.  That means you're able to

7     understand what's happening here today.  That also means that

8     you're able to consult with your attorney and to understand his

9     advice to you.  So under this definition of competence, are you

10    competent today?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  You must also have been competent on the

13    date which is charged in the criminal information.  The

14    criminal information recites dates beginning sometime in or

15    around 2012 and continuing until at least August 26, 2014.  Did

16    you see that in the criminal information?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  So I'm asking you specifically about those

19    dates that are charged in the criminal information.  Look down

20    at paragraph six.

21         THE DEFENDANT:  I don't think those dates are right.

22         THE COURT:  Do you see down on paragraph six?

23       (COUNSEL AND DEFENDANT CONFERRED)

24         THE DEFENDANT:  Okay.  Yes, your Honor.

25         THE COURT:  Do you see them now?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Okay.  Now, with regard to those dates,

3  during those time periods, did you know the difference between

4  right and wrong?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Did you know that what is charged as a

7  crime in this criminal information, in fact, was wrong?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  You were charged in this criminal

10  information with having violated Section 666(a)(2) of Title 18,

11  United States Code.  Now, did you read this criminal

12  information entirely?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you discuss it with your lawyer?

15     (COUNSEL AND DEFENDANT CONFERRED)

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  So, then, with regard to the question I

18  asked a few moments ago that relative to these dates that are

19  charged in the criminal information, during those time periods,

20  did you know the difference between right and wrong?

21          THE DEFENDANT:  Yes, your Honor, I did know.

22          THE COURT:  Now I need to ask defense counsel.

23          MR. BAIN:  Yes, your Honor.

24          THE COURT:  Do you raise any objections concerning

25  your client's competence?

1              MR. BAIN:  No, your Honor.

2              THE COURT:  Are you submitting that your client is

3    competent today to enter a plea of guilty?

4              MR. BAIN:  Yes, he is, your Honor.

5              THE COURT:  Are you further contending that he was

6    competent on the dates charged in the criminal information for

7    the commission of the crime therein?

8              MR. BAIN:  Yes, sir, your Honor.

9              THE COURT:  And, furthermore, with regard to his

10   mental health, have you investigated the effect that the drugs

11   that he's taking may have upon his capacity to understand what

12   is going on?

13             MR. BAIN:  Yes, your Honor.  No claims of any type of

14   impairment of that capacity.

15             THE COURT:  Are you comfortable with the assertion

16   that he fully comprehends everything which is occurring here

17   today?

18             MR. BAIN:  Yes, sir, your Honor.

19             THE COURT:  I turn now to the prosecution.  Does the

20   prosecution make any objection concerning the defendant's

21   competence?

22             MR. LaMARCA:  No, sir, we do not.

23             THE COURT:  And I'm asking whether you make any

24   objections concerning his competence in any respect.

25             MR. LaMARCA:  We do not, your Honor.

1          THE COURT:  All right.  Thank you.  Having asked the

2    court -- having asked the defendant various questions

3    concerning his competence, this court is satisfied that the

4    defendant is competent to enter a plea of guilty.  The court is

5    further persuaded that he was competent to know the difference

6    between right and wrong on the dates charged in the criminal

7    information.

8          Now, Mr. Waggoner, the law requires that you be

9    adequately and competently represented by your lawyer.  Have

10   you had enough time to discuss your case with your lawyer?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Are you satisfied with the amount of time

13   he's spent with you?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Are you satisfied with his advice to you?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If you have any complaints about the way

18   your attorney has handled your case, you need to make that

19   known to me.  So I ask you at this time, do you have any

20   complaints at all about the way he's handled your case?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Do you further understand that if you

23   actually have complaints, by telling me that you have no

24   complaints at this time the court could very well determine

25   that any complaints you make later concerning this matter would

1  be considered by the court to have been waived by you?  Do you

2  understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  So again I ask you, do you have any

5  complaints at all about the way your attorney has handled your

6  case?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  Now I move to a recitation of your rights

9  to trial.  Under the Constitution and laws of the United

10 States, as a criminal defendant before the court you have

11 certain rights.  And I'm sure your lawyer has explained these

12 rights, but I need to go over them again with you.

13          You are entitled to a trial by jury or you're entitled

14 to a trial before the judge, which is called a bench trial.

15 Should there be a bench trial, then I will be the judge and

16 jury and make all decisions under both of those categories.  Do

17 you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  When a jury trial is requested and that

20 trial goes forth, then there will be two triers -- there will

21 be two judges in the courtroom.  There will be the judge of the

22 law and the judge of the facts.  The judge of the law would be

23 myself; the judge of the facts will be the jury.  And the jury

24 will make all the determinations concerning whether you're

25 guilty or not guilty under the evidence.  Do you understand

1    that?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  So, then, you are entitled to a trial by

4    jury if you want one.  And even though you stated that you wish

5    to enter a plea of guilty today, you can still change your mind

6    and ask for a jury trial or a bench trial if you so desire.  Do

7    you understand that?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  If you choose to be tried by a jury, then

10   I will impanel 12 people in the jury box to serve as your jury,

11   and all 12 of those people would have to vote to find you

12   guilty before you could be convicted.  Do you understand that

13   too?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Do you further understand that at trial

16   you would be presumed to be innocent, and the prosecution would

17   be required to prove your guilt by proof beyond a reasonable

18   doubt and you would not have to prove that you were innocent?

19   Do you understand that too?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Now, I mentioned this point about the

22   burden of proof.  The government would have to prove that you

23   are guilty by proof beyond a reasonable doubt.  In other words,

24   that means that in order to find you guilty, the jury would

25   have to be persuaded that the jury has no reasonable doubt

1   concerning your guilt.  Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  So you've heard that term before, proof

4   beyond a reasonable doubt?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  During the course of the trial, the

7   government would have to present its witnesses in open court

8   and in your presence.  And after the government direct examines

9   the witnesses, then your attorney would have the right to

10  cross-examine those witnesses.

11         And, of course, by your sitting next to your lawyer,

12  you'll be able to tell your lawyer what questions you might

13  wish for your lawyer to ask those witnesses.  Do you understand

14  all that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  So then your lawyer would have -- your

17  lawyer on your behalf would have the right to cross-examine

18  those witnesses.  Your lawyer would also have the right to

19  object to any exhibits that the government may seek to

20  introduce during the course of the trial.  Do you understand

21  that too?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And, of course, you'll have the

24  opportunity to review those exhibits prior to the trial.  And

25  then during trial your counsel on your behalf could object if

1    your counsel feels that those exhibits and their contents

2    violate the rules of evidence.  Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you further understand that if any

5    objections are made during the course of trial that I will rule

6    on those objections before the subject of the objections could

7    be revealed to the jury?  Do you understand that too?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you understand that at trial you would

10   be presumed to be innocent?  That means that you will start the

11   trial with a clean slate.  Even though you would have a charge

12   against you, that charge would not carry any weight of

13   evidence, because the charge would be construed as only an

14   accusation.

15             But when you start the trial, you will start the trial

16   as a clean slate with the government having the burden to prove

17   that you were guilty by proof beyond a reasonable doubt.  Do

18   you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And if the government fails in its proof

21   against you, you recognize then that the jury could be required

22   to find you not guilty.  Do you understand that too?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  For instance, right now if you were to

25   stop these proceedings and if these proceedings right now were

1   a trial and if I had a jury and I told the jury to vote as to

2   whether you're guilty or not guilty, since the jury would not

3   have heard any evidence, the jury would have to vote not

4   guilty.  Do you understand that?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Now, I've said that the prosecution would

7   have the burden of proof and that burden must be proof beyond a

8   reasonable doubt.  You would not have to prove anything.  You

9   could sit mute at the counsel table.  You could simply have

10   your lawyer cross-examine or not cross-examine all of the

11   witnesses or object to or not object to all the exhibits.

12            You could take whatever participation at trial you

13   wished to take and you still would not have to produce any

14   evidence on your own nor even to testify.  Do you understand

15   that?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  And if you chose to go to trial and not

18   produce any evidence or not call any witnesses or even not

19   testify, I would advise the jury that that's your

20   constitutional right, that you have a right to rely upon the

21   presumption of innocence and the weakness in the government's

22   case that might be revealed during the course of

23   cross-examination.  Do you understand all of that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  On the other hand, if you elect to go to

1  trial, then you could call witnesses and you could use the

2  subpoena power of this court to get those witnesses here in

3  court.  Do you understand that?

4        THE DEFENDANT:  Yes, your Honor.

5        THE COURT:  Have you ever heard that term "subpoena"

6  before?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  So you know it is a legal document that

9  would require a person served and named to appear at court at a

10  certain time and place.  Do you understand all that?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  And do you also understand that if you

13  wish to testify that you could do so and subject yourself to

14  direct examination from questions by your lawyer and then you

15  would have to answer questions from the prosecution on

16  cross-examination?  Do you understand all that?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  And if you elected to testify, do you

19  understand that I would give an instruction to the jury

20  advising the jury that the jury would not be warranted in

21  disbelieving your testimony simply because you are the

22  defendant?  Do you understand that?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  I will tell the jury that the jury's to

25  evaluate your testimony just as the jury is to evaluate the

1  testimony of every other witness who might appear before the

2  court, taking into account all factors of credibility, but that

3  the jury would not be warranted in disbelieving your testimony

4  simply because you are the defendant.  So do you understand all

5  of this?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Now, if you elect to continue these

8  proceedings and enter a plea of guilty to the criminal

9  information, you do understand there would be no trial.

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And do you understand that if you elect to

12  proceed there will be no further opportunity to request the

13  court to have a bench trial or provide to you a jury trial?  Do

14  you understand that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Do you further understand that should you

17  continue these proceedings towards a plea of guilty to be

18  accepted by the court, that I'll have to ask you various

19  questions concerning your plea?  Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  In fact, I have to satisfy myself that you

22  have met the elements of the charge against you, that you are,

23  in fact, guilty of the charge that the government has waged

24  against you.  So I'll have to ask you some specific questions

25  with regard to that matter.  And do you understand that by

1   answering those questions and by answering that you committed

2   the matters charged against you you would be incriminating

3   yourself?  Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And do you understand that under our

6   Constitution of the United States that one can not be compelled

7   to be a witness against one's self?  That is, no defendant can

8   be compelled to testify against himself in a criminal

9   proceeding.  Do you understand that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  So, then, you understand that the only way

12  I will accept your plea of guilty is by my questioning you with

13  regard to the charge against you and with regard to the

14  activities that the government accuses you of having committed

15  that will make you guilty of the charge here.  Do you

16  understand all that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Are you prepared to waive your right then

19  not to speak to the court about this matter?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And are you prepared to continue these

22  proceedings towards entering a plea of guilty?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And giving up all of the rights I have

25  been explaining to you?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, let's talk about the charge against

3   you.  You're charged by way of criminal information.  This

4   charge recites as follows.  The United States Attorney

5   charges –– I point out at this point that had you been indicted

6   and had we now been proceeding on an indictment, this first

7   line would read "The grand jury charges."  That is the way

8   indictments read.

9          But we're not proceeding on an indictment.  We're

10  proceeding on a charge that's made against you by the United

11  States Attorney's Office.  And I'll talk to you about the

12  particulars of that a little later on.  But this criminal

13  information recites as follows.

14         At all times relevant to this information, one, the

15  Mississippi Department of Corrections, MDOC, was a state

16  government agency as that term is defined in Section 666(d),

17  Title 18, United States Code, and which received benefits in

18  excess of $10,000 annually between 2007 and 2014 under federal

19  programs providing federal assistance to MDOC.

20         Paragraph two, Global Tel–Link –– that's capital

21  T–E–L, dash, L–I–N–K –– (GTL) was under contract with the State

22  of Mississippi to provide telephone services to inmates at MDOC

23  facilities.

24         Three:  The defendant, Sam Waggoner, was a paid

25  consultant for GTL.

1          Four:  GTL paid the defendant, Sam Waggoner, 5 percent

2   of the revenue generated by the inmate telephone services

3   contract it had with the State of Mississippi.

4          Five:  Christopher B. Epps was the commissioner of

5   MDOC.

6          Six:  That beginning sometime in or about 2012 and

7   continuing until at least August 26, 2014, in Hinds County in

8   the Northern Division of the Southern District of Mississippi

9   and elsewhere, the defendant, Sam Waggoner, did knowingly and

10   corruptly give, offer or agree to give something of value to

11   Christopher B. Epps with intent to influence or reward

12   Christopher B. Epps in connection with the business transaction

13   or series of transactions of the Mississippi Department of

14   Corrections involving something of value of $5,000 or more,

15   that is, the awarding and the retention of contracts to

16   Waggoner's employer GTL for inmate telephone services at MDOC

17   facilities.

18          Specifically, on or about July 30th, 2014, and on or

19   about August 26, 2014, the defendant, Sam Waggoner, paid

20   kickbacks in the form of cash generated by his monthly

21   commission from GTL to Christopher B. Epps, all in violation of

22   Section 666(a)(2), Title 18, United States Code.

23          Now, Mr. Waggoner, did you read all of that prior to

24   coming in here today?

25          THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  And did you understand everything that I

2    read there?

3    THE DEFENDANT:  Yes, your Honor.

4    THE COURT:  This criminal information in paragraph

5    seven and eight addresses criminal forfeitures.  Right above

6    paragraph seven is a, quote, Notice of Intent to Seek Criminal

7    Forfeiture, close quote, all in caps.

8    Seven:  As a result of committing the offense alleged

9    in this indictment, the defendant shall forfeit to the United

10   States all property involved in or traceable to property

11   involved in the offense, including, but not limited to, all

12   proceeds obtained directly or indirectly from the offense and

13   all property used to facilitate the offense.  The defendant

14   shall forfeit a money judgment in the amount of $200,000.

15   Paragraph eight:  Further, if any property described

16   above as a result of any act or omission of the defendant, A,

17   cannot be located upon the exercise of due diligence; B, has

18   been transferred or sold to or deposited with a third person;

19   C, has been placed beyond the jurisdiction of the court; D, has

20   been substantially diminished in value; or, E, has been

21   commingled with other property which cannot be divided without

22   difficulty, then it is the intent of the United States to seek

23   a judgment of forfeiture of any other property of the defendant

24   up to the value of the property described in this notice or any

25   bill of particulars supporting it, all pursuant to Section

 1   981(a)(1)(A) and (C), Title 18, United States Code, and Section

 2   2461, Title 28, United States Code.  Did you understand all of

 3   that?

 4            THE DEFENDANT:  Yes, your Honor.

 5            THE COURT:  So, then, you know what the charge against

 6   you as recited in the criminal information recites.  Do you

 7   understand that?

 8            THE DEFENDANT:  Yes, your Honor.

 9            THE COURT:  And as I told you earlier, this is a

10   criminal information signed by the acting United States

11   Attorney, who is Mr. Harold Brittain.  And he has signed this

12   document at the bottom of page two.  That is the power of an

13   United States Attorney to bring a criminal indictment against a

14   defendant.  So you do understand that Mr. Brittain had the

15   authority to sign this criminal information.

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Do you further understand that you had an

18   option not to proceed under this criminal information?  Has all

19   of that been explained to you?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Have you been arraigned on this charge?

22        (COUNSEL AND DEFENDANT CONFERRED)

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  And when were you arraigned?

25            THE DEFENDANT:  9:00 this morning.

1          MR. BAIN:  Your Honor, we just came up from that.

2          THE COURT:  And who was the magistrate judge?

3          MR. BAIN:  Judge Ball.

4          THE COURT:  All right.  And you appeared before

5   Judge Ball previously, and at that time you were advised that

6   you were charged by way of criminal information.

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Are you satisfied with the explanation he

9   provided to you as the distinction between a criminal

10  information and an indictment?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And you recognize that if you choose even

13  now not to undergo these proceedings under a criminal

14  information that you could simply tell me, and then I will stop

15  these proceedings and then wait to see if you are subsequently

16  indicted.  And only then are you -- can you be taken to a

17  proceeding against your agreement with the mode of proceeding.

18  Do you understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  So, now, are you prepared to go forward

21  under this criminal information?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  At your session before the United States

24  magistrate judge, did you sign a waiver of grand jury

25  proceeding?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now let me turn to the prosecution.  Do

3    you agree with that?

4          MR. LaMARCA:  I do, your Honor.

5          THE COURT:  Do you have a copy of it?

6          MR. LaMARCA:  I do not.  It was presented to the court

7    about an hour ago entitled "Waiver of Indictment."  So the

8    magistrate court does have that document.

9          THE COURT:  Were you present during that hearing?

10         MR. LaMARCA:  I was, your Honor.

11         THE COURT:  And did the judge accept that waiver of

12   indictment?

13         MR. LaMARCA:  He did.

14         THE COURT:  And indicate that he would file same in

15   the record?

16         MR. LaMARCA:  He did.

17         THE COURT:  All right.  Thank you.  Mr. Bain, do you

18   agree too?

19         MR. BAIN:  Yes, your Honor.

20         THE COURT:  Since you now have waived your right to be

21   indicted by a grand jury, then I can proceed with this criminal

22   information.  Is that your choice, that I proceed with this

23   criminal information?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Now, I have read this criminal information

1   to you which charges you under 18, United States Code, Section

2   666(a)(2), that makes it a crime for anyone to corruptly give,

3   offer or agree to give anything of value to any person with

4   intent to influence or reward an agent of an organization or of

5   a state, local or Indian tribal government or any agency

6   thereof that receives more than $10,000 in federal assistance

7   in any one-year period in connection with any business

8   transaction or series of transactions of such organization,

9   government or agency involving anything of value of $5,000 or

10  more.

11          So, then, if you were to elect even at this present

12  time to go to trial, then the prosecution would have to prove

13  the following.

14          First:  That Christopher Epps was an agent of the

15  State of Mississippi as the commissioner of the Mississippi

16  Department of Corrections;

17          Second:  That the Mississippi Department of

18  Corrections was an organization that received in any one-year

19  period benefits in excess of $10,000 under a federal program

20  involving a grant;

21          Third:  That you corruptly gave with the intent to

22  influence Christopher Epps in connection with any business or

23  transaction of the Mississippi Department of Corrections; and,

24          Fourth:  That the business or transaction or series of

25  transactions involved anything of value of $5,000 or more.

1       Now, the term "agent" means a person authorized to act

2  on behalf of another person or a government.  And the case of

3  an organization or government, it includes a servant or

4  employee and a partner, director, officer, manager, and

5  representative.

6       And the first element that I read to you that the

7  prosecution would have to prove states that Christopher Epps

8  was an agent of the State of Mississippi as the commissioner of

9  the Mississippi Department of Corrections.  So, then, again,

10  this term "agent" means a person authorized to act on behalf of

11  in this case the Mississippi Department of Corrections.  Do you

12  understand that?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  Then there's the term "government agency."

15  That means a subdivision of the executive, legislative,

16  judicial or other branch of government, including a department,

17  independent establishment, commission, administration,

18  authority, board and bureau and a corporation or other legal

19  entity established and subject to control by a government or

20  governance for the execution of a governmental or

21  intergovernmental program.

22       Now, that's in the second element where the

23  government -- where the prosecution would have to prove that

24  the Mississippi Department of Corrections was an organization

25  that is a governmental agency in the sense that it received the

1  requisite amount that would subject a violator to prosecution

2  under Section 666(a)(2) and that this 666(a)(2) activates when

3  such an entity receives in any one-year period benefits in

4  excess of $10,000 under a federal program involving a grant.

5  Do you understand all that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  This offense, again, under the second

8  element that the prosecution would have to prove could also

9  involve a local government, and that would simply mean

10  pertaining to a political subdivision between the state.

11          The other term is "state."  Of course, we know what a

12  state is.  It is a state of the United States, the District of

13  Columbia and any commonwealth, territory or possession of the

14  United States.  Of course, we recognize that the state here is

15  Mississippi.

16          The term "in any one-year period" means a continuous

17  period that commences no earlier than 12 months before the

18  commission of the offense or that ends no later than 12 months

19  after the commission of the offense.  Such period may include

20  time both before and after the commission of the offense.  So

21  this term "in any one-year period" connotes what I have just

22  stated.  Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  An act is corruptly done if it is done

25  intentionally and with an unlawful purpose.

1          And the third element that the prosecution would have

2     to prove -- the third element is that you corruptly gave with

3     the intent to influence money or reward in connection -- well,

4     let me back up off that.

5          The third element is that you corruptly gave with the

6     intent to influence Christopher Epps in connection with any

7     business transaction of the Mississippi Department of

8     Corrections -- of Corruptions -- excuse me -- Corrections.  The

9     term I want to focus on here is "corruptly."  And "corruptly"

10    has a specific definition here.  "Corruptly" means that the act

11    was done intentionally and with an unlawful purpose.  Do you

12    understand then how "corruptly" is used here?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  The term "value" means the face, par,

15    market value or cost price, either wholesale or retail,

16    whichever is greater.

17          Now, with regard to conduct, it is not necessary for

18    the prosecution to prove that your conduct directly affected

19    the federal funds received by the agency under the federal

20    program.  There must, however, be some connection between the

21    criminal conduct and the organization.  In this case there must

22    be some connection between the criminal conduct and the agency

23    involved receiving federal assistance.

24          In determining whether you are guilty of this offense,

25    the jury should not consider bona fide salary, wages, fees, or

1  other compensation paid or expenses paid or reimbursed in the

2  usual course of business.  So then this matter has to concern

3  something other than those factors I just discussed.  Do you

4  understand all of that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you have any questions at all as to

7  what the government would have to prove with regard to this

8  charge against you?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Counsel?

11          MR. LaMARCA:  Your Honor, if it please the court, with

12  regard to element three --

13          THE COURT:  Right.

14          MR. LaMARCA:  -- it reads -- or should be that the

15  defendant corruptly gave anything of value to any person with

16  the intent to influence in this case Christopher Epps in

17  connection.

18          THE COURT:  Okay.  I think I missed that.  So I'll go

19  back over that.  Thank you.

20          MR. LaMARCA:  Yes, sir.

21          THE COURT:  The element three, I want to go back over

22  it again; and in going back over element three, I will first

23  start back with the first element.

24          The prosecution has to prove that Christopher Epps was

25  an agent of the State of Mississippi as the commissioner of the

1  Mississippi Department of Corrections.  Secondly, that the

2  Mississippi Department of Corrections was an organization that

3  received in any one-year period benefits in excess of $10,000

4  under a federal program involving a grant.

5          Then we come back to the third element, that you

6  corruptly gave anything of value to any person -- and here

7  Christopher Epps is the one who is the subject of this -- with

8  the intent to influence or reward Christopher Epps.  So you

9  could give it either directly to him or give it to anyone else

10  to be given to him in order to influence him in connection with

11  any business or transaction or series of transactions of the

12  Mississippi Department of Corrections.

13          And, fourthly, that the business transaction or series

14  of transactions involved anything of value of $5,000 or more.

15  Do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Let me turn back to the prosecution.  Are

18  you satisfied?

19          MR. LaMARCA:  Yes, your Honor.

20          THE COURT:  Thank you.

21      (OFF-RECORD DISCUSSION WITH COURTROOM DEPUTY CLERK)

22          THE COURT:  We'll take a recess for about 15 minutes.

23      (RECESS)

24          THE COURT:  You may be seated.  Now, I had just

25  finished asking you and explaining to you -- well, asking you

1    about the criminal information and your understanding of it and

2    then explaining to you the elements that the government would

3    have to prove if this case were set for a trial.

4         Now I'll go into the penalty provisions.  Do you

5    understand that the maximum penalty is not more than ten years

6    imprisonment and a fine of $250,000?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Do you further understand that this

9    penalty under this section carries a term of supervised release

10   of not more than three years?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Do you know what supervised release is?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  Supervised release occurs when an

15   individual is placed under the jurisdiction of the United

16   States Probation Office, and then that office supervises the

17   individual based upon what the court instructs the probation

18   office to enforce.

19        So then the probation office will require the releasee

20   to comply with conditions, terms and restrictions imposed

21   through the United States Probation Office -- imposed by the

22   court through the United States Probation Office.  Any

23   violation of those terms could result in the individual being

24   brought back before the court and with the court then exacting

25   some penalty for failure to comply with those terms.  Do you

1    understand that?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  And you should have to undergo this fate,

4    which I certainly hope it would not happen, do you understand

5    that the court could order additional incarceration, additional

6    fine, additional punishment that would comport with the law,

7    but it would be the court's discretion how the court would

8    punish a transgressor who has been brought back before the

9    court under this circumstance?  Do you understand that?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Any questions about that?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  Do you further understand that you'd have

14   to pay a special assessment fee of $100 which is ordered by

15   Congress and this is mandatory?  Do you understand that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Now, do you have any questions at all

18   about the penalty the court could exact upon you?

19           THE DEFENDANT:  No, your Honor.

20           THE COURT:  Then, finally, there's this matter of

21   forfeiture.  Now, there's a forfeiture provision as part of

22   your criminal information.  And do you understand that if you

23   elected to go to trial then that would be adjudicated by a

24   trier of fact also?  But, otherwise, if you are entering a plea

25   of guilty and if you have negotiated some forfeiture with the

1   government, then I would view the terms and see if I approved.

2   Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Then there's the matter of restitution

5   that any defendant convicted of a crime where Congress has

6   determined that the individual should be subjected to the

7   penalty of restitution, that you would have to undergo that

8   should the court so order it.  Restitution occurs where the

9   court would require you to pay back the victim of the offense.

10  Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Let me turn to the prosecution.  Is there

13  a matter of restitution here?

14           MR. LaMARCA:  Your Honor, any matter of restitution

15  will be left to the court, to the discretion of the court.

16  There's been no agreement with restitution with the defendant,

17  your Honor.

18           THE COURT:  Does the government intend to pursue

19  restitution?

20           MR. LaMARCA:  We -- we will evaluate that.  We --

21  there may be some restitution that's in order.  But that will

22  be -- those figures we do not have or would be in a position to

23  present to the court at this time, but we will consider that.

24           THE COURT:  All right.  Now, Mr. Waggoner, do you

25  understand what he just said?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  At present they have not advised you of

3    what matters, if any, they may make the subject of restitution.

4    But between now and sentencing, they will make their

5    determination and then file the requisite papers.  Do you

6    understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Let me turn back to the prosecution.

9          MR. LaMARCA:  Yes, your Honor.

10          THE COURT:  I've looked at the forfeiture provision in

11    the criminal information.  Are there any other forfeitures that

12    the government would pursue here other than the forfeiture item

13    that's listed in the criminal information?  For instance, would

14    the government claim that any assets owned by the defendant are

15    matters that should be subject to forfeiture?

16          MR. LaMARCA:  Your Honor, the government at this --

17    pursuant to our agreement and pursuant to the information, is

18    only proceeding for a money judgment through the agreement of

19    the defendant and will not be pursuing any forfeiture of an

20    asset except as possibly substitute assets for the money

21    judgment.

22          THE COURT:  Now, I do not know how much money the

23    government claims is involved in this entire matter --

24          MR. LaMARCA:  The --

25          THE COURT:  -- but --

1          MR. LaMARCA:  I'm sorry.

2          THE COURT:  Let me just finish this, then.  I do not

3     know how much money the government contends is involved in this

4     entire matter.  If that sum of money exceeds $200,000, would

5     the government be seeking restitution beyond $200,000?

6          MR. LaMARCA:  We do not anticipate to seek -- as far

7     as the money judgment is concerned and anything in excess of

8     that as a forfeiture, we do not intend to seek anything more

9     than what we are agreeing to as far as a money judgment of

10    $200,000.

11          When it comes to restitution, it is not under the

12    Mandatory Victims Restitution Act, but it's under the Victims

13    and Witness -- did I state it correctly -- yeah, Victim and

14    Witness Restitution that is discretionary with the court.

15    There may be some items that -- or some entities that would be

16    entitled to restitution.  Again, that would be discretionary

17    with the court.  It's not mandatory in this case.

18          THE COURT:  All right.  Thank you.  Mr. Waggoner, did

19    you understand what he said?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  So then, essentially, the U.S. Attorney's

22    Office is reserving the right to file whatever papers that the

23    U.S. Attorney's Office is authorized under the law to do, and

24    between now and sentencing the U.S. Attorney's Office will file

25    that matter and then we'll proceed on any such papers.  All

1    right?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  All right.  Now, has anyone threatened you

4    or coerced you or forced you to come here today to enter a plea

5    of guilty?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Would you be entering a plea of guilty

8    voluntarily and of own free will?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Let me turn to the prosecution.  Is there

11   a plea agreement here?

12           MR. LaMARCA:  There is, your Honor.

13           THE COURT:  All right.  Recite the pertinent elements

14   of such.

15           MR. LaMARCA:  Your Honor, the defendant has agreed to

16   plead guilty to the information -- waived proceeding by

17   indictment and has agreed to, as I say, proceed by information,

18   willing to plead guilty to that information, also willing to

19   enter an agreed preliminary order of forfeiture for a money

20   judgment of $200,000.

21           In exchange for that and those recommendations that

22   are contained in the plea supplement, the government will

23   proceed strictly on the information in exchange for that and

24   the government's concession in that regard.  The defendant has

25   agreed to waive his right to appeal the conviction or the

1   sentence imposed in this case or the manner in which the

2   sentenced is imposed on any ground whatsoever.

3           He's agreed waive the right to contest the conviction

4   and sentence or the manner in which the sentence is imposed in

5   any postconviction proceeding, including, but not limited to,

6   one brought under Title 28, United States Code, Section 2255,

7   and any other type of proceeding that may be claiming double

8   jeopardy or excessive penalty as a result of any forfeiture

9   ordered or to be ordered; also the right to seek attorney's

10   fees or costs under the Hyde Amendment; also the right, whether

11   asserted directly or by a representative, to request or receive

12   information about this case or records of the United States or

13   the investigating agency about the prosecution of this case,

14   including without limitation anything sought by the defendant

15   or his representative under the Freedom of Information Act or

16   the Privacy Act.

17           Finally, the defendant pursuant to the plea agreement

18   acknowledges and agrees that factual issues regarding

19   sentencing will be resolved by the court and by a preponderance

20   of the evidence standard and waives any right to a jury

21   determination of these sentencing issues if one exists.

22           And the defendant also further agrees that in making

23   its sentencing decision, the court may consider relevant

24   evidence without regard to its admissibility under the rules of

25   evidence that would normally be applicable at trial.  The

1   defendant has expressly waived those rights, but does reserve

2   the right to raise ineffective assistance of counsel claims in

3   any future proceeding.

4          With that being said, those are the major terms of the

5   plea agreement -- or just some of the terms of the plea

6   agreement, without going into detail as to each and every term.

7          THE COURT:  All right.  Thank you.  Now, Mr. Waggoner,

8   did you read this agreement?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And is it, in fact, an agreement between

11   you and the prosecution?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Before entering into that agreement did

14   you discuss it thoroughly with your lawyer?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And are you satisfied that your lawyer has

17   answered all your questions concerning this document?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you have any questions that you'd like

20   to pose to me about that document?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  Now, ordinarily, a defendant has a right

23   to appeal his conviction and sentence to the next higher court.

24   Now, under this agreement, do you understand that you are

25   waiving that right?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  So that means then that once this court

3     announces its decision on sentencing that you would not have

4     the usual resource a defendant has to appeal that sentence or

5     conviction or both to the next higher court.  Do you understand

6     that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you further understand that after you

9     are sentenced and should you desire to file a habeas corpus --

10    you've heard of that before?

11         THE DEFENDANT:  I have, your Honor.

12         THE COURT:  Habeas corpus?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Where one would attack the imposition of a

15    sentence by some court?  Do you understand that this document

16    would preclude that, would prevent you from filing any habeas

17    corpus in any court?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you further understand that this court

20    in sentencing you may consider all relevant evidence, that I

21    would make a decision whether any evidence submitted by the

22    prosecution is relevant to sentencing; and then if I determine

23    that it's relevant, I do not have to make a finding that it's

24    relevant by proof beyond a reasonable doubt, but, instead, I

25    can determine that it's relevant under the standard of

1   preponderance of the evidence, which is a civil standard which

2   merely means that the court is persuaded that by the greater

3   weight of the evidence that something should or should not be

4   done?  Do you understand all of that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  So then with regard to this relevant

7   evidence, that the court first would look at the sentencing

8   guidelines.  Now, have you heard something about the sentencing

9   guidelines?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Have you looked at them to see how they

12  might apply to you in this litigation?

13         THE DEFENDANT:  Not thoroughly.

14         THE COURT:  All right.  But do you have a thumbnail

15  sketch about how they work?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And you recognize then that under the

18  guidelines the court would look at the subject offense.  Here

19  in your case it's bribery.  Do you recognize that bribery would

20  carry a certain number of points?  And then the court will look

21  at any aggravating features of the crime that are recognized by

22  the guidelines.  And if the court identifies any, the court

23  will look to see how many points should be added to the basic

24  bribery guideline.  Do you understand that?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And then the court will do the same with

2     any other matters that come before it that are deemed to be

3     aggravating circumstances.  If the court finds an aggravating

4     circumstance, the court will then determine what should be the

5     requisite amount or number of points that should increase that

6     basic point or basic load for bribery.  Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  The court will also look at your criminal

9     history and see if you fall in criminal history category I, II,

10    III, IV, V or VI.  And whether you fall within a certain

11    category depends upon whether you have been convicted before

12    and whether you have been convicted more than one time.  The

13    lowest level is a I.  The highest level is a VI.  And the court

14    will look at that to determine what your criminal history is.

15    Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  So then the court will take this criminal

18    history score as well as the points that I just mentioned

19    earlier and then look at those two items to determine what the

20    guideline range should be.  Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  But the court doesn't stop there.  The

23    court also has to look at any mitigating circumstances.

24    Remember when I talked to you about aggravating circumstances?

25    Well, the court also can look at mitigating circumstances.

1          Now, the most prominent mitigating circumstance is

2   where a defendant undertakes to enter a plea of guilty.  And

3   then for acknowledging his guilt, the defendant may earn from

4   that one point, two points or three points, depending upon the

5   court's discretion.  Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And should the court determine that there

8   are mitigating points, then the court subtracts those

9   mitigating points from the total of points I talked about

10  earlier.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Then the court goes back to the criminal

13  history score, and the points total plus the criminal history

14  category will lead the court to a table of punishment.  And the

15  court then will determine what the appropriate sentence should

16  be based upon that table of punishment which will set out the

17  lowest number of months the court should impose based upon the

18  highest number of points the court should impose.  Do you

19  understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  But do you understand that all of that is

22  discretionary?  First of all, the court has to make certain

23  determinations with regard to those points.  And you will be

24  privy to that because your attorney will be involved all along

25  the way and so will you with regard to those calculations.

1    They will be submitted to you by the probation officer.

2           And then when it comes to the sentencing range, then

3    we can all look at the table of punishment and determine what

4    the guideline range is.  And the court has discretion within

5    that guideline range to sentence either at the lowest number of

6    months or the highest number of months.  Do you understand all

7    that?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Now, the court also has the discretion to

10   consider whether to upward depart above the highest number of

11   months prescribed by the guidelines -- the guideline act,

12   sentencing act.  Do you understand that?

13          THE DEFENDANT:  Now I do, yes, sir, your Honor.

14          THE COURT:  So suppose then that the sentencing

15   guidelines after the calculations we've been discussing

16   prescribe a minimum of A and a maximum of B.  The court can go

17   to C if the court is convinced that the guidelines do not fully

18   describe the offense or that there are other factors that ought

19   to be taken into account, and then the court can go above that

20   top guideline of B and go to C or D.  Do you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  In making that determination whether to go

23   above the guidelines, the court may take into account something

24   called relevant conduct.  Now, you heard the prosecutor mention

25   that with regard to relevant conduct, should the court inquire

1 under this category, the court's determination will be met by
2 preponderance of the evidence, not by proof beyond a reasonable
3 doubt.  Do you understand that?
4          THE DEFENDANT:  Yes, your Honor.
5          THE COURT:  So then should the court decide that there
6 are other matters germane to your conduct that the court ought
7 to consider, ought to consider, under this banner of relevant
8 conduct, do you understand the court, first of all, will
9 identify the conduct, second of all, determine by a
10 preponderance of the evidence whether it impacts or should
11 impact upon sentencing here?  And then the court if it makes
12 the determination will allow, of course, you through your
13 attorney to make your objections to any use of the relevant
14 conduct.
15          But if I overrule the objection and decide to utilize
16 this relevant conduct, whatever it might be, then I can use
17 that to increase your score.  And then as I was telling you
18 earlier, if the guidelines prescribed a range of A to B, then
19 the relevant conduct might persuade me to go to C or D.  Do you
20 understand now?
21          THE DEFENDANT:  Yes, your Honor.
22          THE COURT:  And I can do that.  But in doing that, I
23 must put on the record why I have determined to do that, why
24 that relevant conduct has persuaded me to go above the
25 guidelines.  Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, so far we've been talking about an

3    upward departure.  That is when I go above the guidelines.  And

4    do you understand that I can also go below the guidelines?

5          Now, I can go below the guidelines if I am determined

6    that there is something about this crime or something about you

7    that should be taken into consideration which has not been

8    taken into consideration under these sentencing guidelines.

9    And if I were to make that determination, then I can go below

10   A, which is I told you before the lowest number of months under

11   the guidelines I could impose as a sentence.  Then the court

12   could go below A.  Do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Now, what I've been discussing with you so

15   far all deals with the sentencing guidelines.  Now, the

16   sentencing guidelines are based on this point system, and the

17   sentencing guidelines rarely prescribe a punishment

18   commensurate with the maximum sentence that the statute

19   provides.  There are some circumstances where it might.

20         Now, the maximum sentence the court can impose here,

21   as you remember, is 10 -- not more than 10 years imprisonment

22   and a fine of $250,000.  Do you remember that?

23         THE DEFENDANT:  Yes, sir.  Yes, your Honor.

24         THE COURT:  Now, I've just discussed with you the

25   court's approach when utilizing the sentencing guidelines.  The

1    court is not required to apply the sentencing guidelines.   If I

2    choose, I may apply the constricts of the statute.   So if I

3    decide to sentence you under the statute and not under the

4    guidelines, first of all, I would provide notice to you and

5    your attorney so that you all are prepared for that

6    possibility.

7            Next, if I decide to proceed under the statute, I will

8    place on the record my reasons for not proceeding under the

9    guidelines.   And then, finally, with regard to the statute, the

10   court may sentence you to any sentence authorized by statute.

11   So I could sentence you up to the maximum as provided by law.

12   Now, do you understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  Any questions about that at all?

15            THE DEFENDANT:  No, your Honor.

16            THE COURT:  And, of course, if I resort to the

17   statute, I will consider any and all information just as I

18   would on the sentencing guidelines that pertains to you and

19   pertains to the offense.   Do you understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  The only difference is is that when we go

22   into the statute the court is expressly disclaiming that it

23   will -- well, it's -- the court is expressly proclaiming then

24   that it will use the statute instead of the guidelines for

25   whatever reasons the court enunciates.   Do you understand that

```
 1   now?
 2              THE DEFENDANT:  Yes, your Honor.
 3              THE COURT:  Any questions whatsoever about that?
 4              THE DEFENDANT:  No, your Honor.
 5              THE COURT:  Now, we've been talking then about the
 6   plea agreement that you have with the prosecution.  Did you
 7   sign this agreement?
 8              THE DEFENDANT:  Yes, your Honor.
 9              THE COURT:  And when did you sign it?
10       (EXAMINED DOCUMENT)
11              THE DEFENDANT:  7/15.
12              THE COURT:  All right.  July 15th is when you signed
13   the document?  7/15?  Okay.  Was it July 15 then?  Okay.  So
14   July 15, 20 -- no, excuse me.  July 15, 2015, is when you
15   signed the document.
16              MR. BAIN:  Yes, your Honor.
17              THE DEFENDANT:  Yes.
18              THE COURT:  All right.  And, counsel, when did you
19   sign it?
20              MR. BAIN:  7/10/15, your Honor.
21              THE COURT:  7/10/15.
22              MR. BAIN:  The difference in that was just logistics
23   with me being out of Corinth, Mississippi, and him being down
24   here, just getting that to him -- explaining it to him and then
25   getting it to him.
```

1          THE COURT:  All right.  So you signed it on the 10th

2     of July.

3          MR. BAIN:  Yes, your Honor.

4          THE COURT:  And he signed it on the 15th of July.

5          MR. BAIN:  Yes, sir.

6          THE COURT:  Now, counsel, are you satisfied that your

7     client understands this agreement?

8          MR. BAIN:  Yes, sir, very satisfied.

9          THE COURT:  And, Mr. Waggoner, again, did you read

10    every word of this agreement?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And are you satisfied you understand each

13    and every word of this agreement?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you have any questions whatsoever about

16    this agreement?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  If so, then I'm willing to answer those

19    questions for you.  So think again.  Are there any questions

20    whatsoever you have about the force of this agreement?  Look

21    through it one more time and then tell me if you have any

22    matters about which you wish to inquire.

23    (EXAMINED DOCUMENT)

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  All right.  Now I turn to the prosecution.

1    And when did you sign this agreement?

2              MR. LaMARCA:  I signed it today, your Honor.

3              THE COURT:  All right.  Thank you.

4              MR. LaMARCA:  Yes, sir.

5              THE COURT:  Now, let's talk about the plea supplement.

6    Do you have that in front of you, Mr. Waggoner?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Did you read it?

9              THE DEFENDANT:  Yes, sir.  Yes.  Yes, sir.

10             THE COURT:  Each and every page?  And did you discuss

11   it with your lawyer?

12             THE DEFENDANT:  I didn't understand it all, but

13   that's -- I did -- we did.

14             THE COURT:  Do you understand it now?

15             THE DEFENDANT:  Yes, sir, as much as I can.

16             THE COURT:  Well, let's be sure.  Take your time and

17   look through it.

18             THE DEFENDANT:  Okay.

19             THE COURT:  And take your time.  Would you like to sit

20   down while you do it?  Why don't you take a seat.

21             THE DEFENDANT:  I understand it.

22             THE COURT:  No.  Why don't you take a seat.  Have a

23   seat.

24        (COMPLIED WITH REQUEST)

25             THE COURT:  Now, Mr. Waggoner, you've had a chance to

1    sit at counsel table with your lawyer and go over the document?

2    Have you had enough time to do that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Would you like any more time?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Now, then, I asked you about the plea

7    supplement.  Do you understand it now?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Each and every paragraph.

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Any questions whatsoever about that

12   document?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  And when did you sign it?

15             THE DEFENDANT:  7/15.

16             THE COURT:  All right.  Of 2015.

17             THE DEFENDANT:  2015.

18             THE COURT:  All right.  And let me turn to Mr. Bain.

19   Mr. Bain, when did you sign it?

20             MR. BAIN:  Yes, your Honor, same, July 10th -- well,

21   your Honor, I guess we're -- oh, that's the first one.  That's

22   right.  We re-executed one this morning.  So we all signed it.

23   He signed it this morning as well as I.

24             THE COURT:  You say re-executed one?

25             MR. BAIN:  Yes, your Honor.

1          THE COURT:  All right.  Is this one that -- is this

2     one identical to the one he previously signed?

3          MR. BAIN:  It is.  There was something that we had to

4     iron out.  We've ironed that out in the interim, and he's --

5     it's identical, your Honor.

6          THE COURT:  Okay.  Do you have both documents there?

7          MR. BAIN:  I do, your Honor.

8          THE COURT:  Okay.  Let me have it.

9     (DOCUMENTS TENDERED TO THE COURT)

10          THE COURT:  Mr. Waggoner, I have compared the document

11     you signed back on July 15, 2015, to the document you signed on

12     August 21, 2015.  I see some differences.  Now, are you aware

13     that the two documents are different?

14     (COUNSEL AND DEFENDANT CONFERRED)

15          THE DEFENDANT:  Yeah.  I know what was -- yes, sir.  I

16     do know the difference.  I think it was about a money amount.

17     Is that correct?

18          THE COURT:  Well, there are some other differences

19     here.  For instance, there's a page that's inserted on -- in

20     the document that you signed today that was not in the document

21     that you signed on July 15.  That's page four.

22          Counsel, write this down, page four.

23          Then on page five there's a reference to money

24     judgment that was erased in the preceding document.  That's on

25     page five.  Then on page six, that's a page that's inserted

1  there that is not present on the original document you signed

2  on July 10, 2015.

3          Now, counsel, I'm going to give back this document to

4  you so that you can be sure that your client has paid attention

5  to these differences.  Now, before you get this document, let

6  me ask this other question here, or two, that at the end of

7  this document, Mr. Waggoner, as well as at the conclusion of

8  the plea bargain -- memorandum of understanding are some

9  declarations, and the declarations read as follow in both

10 documents.

11         Defendant and defendant's attorney of record declare

12 that the terms of this plea agreement have been, one, read by

13 or to defendant; two, explained to defendant by defendant's

14 attorney; three, understood by defendant; four, voluntarily

15 accepted by defendant; and, five, agreed to and accepted by

16 defendant.  Now, do you see those declarations?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And do you agree with those declarations?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  In both documents.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And, counsel, Mr. Bain, do you agree with

23 those declarations?

24         MR. BAIN:  Yes, your Honor.

25         THE COURT:  In both documents.

 1          MR. BAIN:  Yes, your Honor.

 2          THE COURT:  Now, I'm going to give you back the

 3   8/21/15 plea supplement, and then I want you to go over those

 4   places that I mentioned that are different from the first

 5   document he signed so you can see the difference.

 6          Twana.

 7      (DOCUMENT TENDERED TO COURTROOM DEPUTY CLERK)

 8          THE COURT:  You all can sit down and -- I tell you

 9   what, why don't you all go to the jury room outside so you can

10   have some privacy.  I'll sit here and wait.  Just take your

11   time.

12      (COMPLIED WITH REQUEST)

13          THE COURT:  Ready to resume?

14          MR. BAIN:  Yes, your Honor.

15          THE COURT:  Okay.  Now, then, Mr. Bain, have you had

16   enough -- have you had enough time to talk to your client about

17   this matter?

18          MR. BAIN:  Yes, your Honor, I have.

19          THE COURT:  Why don't you put it on the record what

20   the confusion is and what the solution is.

21          MR. BAIN:  Your Honor, the first -- back up just a

22   little bit.  The first plea supplement that was given to us had

23   an amount, the $200,000 money judgment that we discussed

24   earlier.  At that point in time there was some confusion about

25   that.  Since then -- so when he signed the plea supplement,

1    scratched that out, and submitted it to the U.S. Attorney's

2    Office.  Since that time, he is comfortable with that amount as

3    am I.  And then we executed the new one today.

4         As far as what the court saw earlier was -- with pages

5    that was inserted, that was just my copy for whatever reason

6    did not have the complete supplement agreement that I had.

7    Otherwise, they are identical.

8         THE COURT:  All right.  So then the document that he

9    signed back on the 15th is identical to the plea supplement

10   that he signed on the 21st.

11        MR. BAIN:  Yes, sir.

12        THE COURT:  All right.  Mr. Waggoner, have you had a

13   chance to compare those?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Are you satisfied that they are identical?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  And with regard to those declarations that

18   I asked you about earlier, you still adhere to those

19   declarations -- those five declarations I read off?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  All right.  Now, Mr. Bain, do you too?

22        MR. BAIN:  Yes, sir, your Honor.

23        THE COURT:  All right.  Mr. LaMarca, this explanation

24   about the plea supplement, are you in agreement with Mr. Bain's

25   explanation about the seeming discrepancy that I mentioned

1    earlier?

2         MR. LaMARCA:  I am, your Honor.

3         THE COURT:  So, then, there really wasn't a

4    discrepancy.

5         MR. LaMARCA:  There was no discrepancy.  They are

6    complete, identical documents other than the scratching out

7    that was on 7/15 that's no longer on 8/21.

8         THE COURT:  All right.  And that scratch-out was

9    purely a scratch-out involving money.

10        MR. LaMARCA:  The one phrase of the money judgment.

11   Correct.

12        THE COURT:  All right, then.  I will accept the plea

13   agreement and the plea supplement.  May I have them, please.

14        MR. LaMARCA:  Yes, your Honor.

15      (DOCUMENT TENDERED TO THE COURT)

16        THE COURT:  I have two documents.  One is a plea

17   agreement between the United States and Mr. Sam Waggoner.  On

18   the first page it's dated May 6th, 2014 (sic).  The first page

19   is not numbered at the top nor at the bottom.  Page two is

20   numbered at the bottom.  Page three is numbered at the bottom,

21   as is page four, as is page five and also page six.

22        The document is in nine paragraphs.  The last

23   paragraph, the ninth paragraph, is styled, quote, Complete

24   Agreement, unquote.  And after that are the declarations that I

25   read off earlier, the five declarations.  Following that are

1   the signatures of the principals.  I see "Darren J. LaMarca,"

2   his signature, Assistant United States Attorney.  The signature

3   of Mr. Sam Waggoner follows, because he said he signed it.

4   Mr. Waggoner, is this your signature?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  And thereafter is the signature of

7   Attorney Nick Bain.  The signatures of -- well, let's see.  All

8   three were signed on different days.  Mr. LaMarca signed his

9   today.  Mr. Waggoner signed his on the 15th of July.  And

10  Mr. Bain signed his on the 10th day of July.

11          And Mr. Bain has informed the court that he signed his

12  on July 10 and thereafter sent this document to Mr. Waggoner

13  which accounts for why there are different dates for Mr. Bain's

14  signature and Mr. Waggoner's signature.

15          The next document is the plea supplement.  It is dated

16  on the front page May 6, 2015.  It's neither numbered at the

17  top nor bottom.  This document is in paragraphs.  The document

18  is numbered at the bottom at page two, three, four, five, six

19  and seven.  At the bottom of page six is an "H" and at the top

20  of page seven is an "I."

21          After that there are some declarations, the same ones

22  I read off earlier.  And following that are the same signatures

23  of the parties except that Assistant United States Attorney

24  Mr. LaMarca has affixed as the date 8/21/15.  Mr. Waggoner has

25  affixed as the date 8/21/15, as has Mr. Bain, the date of

1    8/21/15 signifying the date that he too signed this document.

2          I will make the plea agreement a part of the usual

3    record, and I will make the plea supplement a part of the

4    confidential record pursuant to the local rules of court.

5          Now, then, I turn to the factual basis for your plea,

6    Mr. Waggoner.  I told you back when I advised you of all your

7    various rights that if you determine to enter a plea of guilty,

8    that I will be required to satisfy myself that your plea meets

9    the elements of the crime charged.  And I have also advised you

10   as to what those elements are.

11         So I will ask the prosecution to stand and tell me

12   what constitutes a crime by your conduct, and that is a crime

13   as charged by the criminal information.  When Mr. LaMarca is

14   going -- Mr. LaMarca or Mr. Gilbert?  It's going to be

15   Mr. Gilbert.

16         When Mr. Gilbert finishes, then I am going to ask you

17   whether you agree with his statements.  And then I'm going to

18   go a bit further.  I'm going to ask you to tell me in your own

19   words what you did to make you guilty under this criminal

20   information.  All right.  Mr. Gilbert.

21         MR. GILBERT:  Your Honor, had this case gone to trial,

22   the United States would have proven that at all times relevant

23   to this information Christopher B. Epps was the commissioner of

24   the Mississippi Department of Corrections, a state agency that

25   received more than $10,000 each calendar year in funding from a

1    federal grant or in relation to a federal program.

2          The evidence would show that on or about

3    December 13th, 2005, Global Tel-Link, or GTL, was awarded a

4    contract by the Mississippi Department of Information

5    Technology Services on behalf of the Mississippi Department of

6    Corrections to provide inmate phone services for multiple MDOC

7    facilities, including Parchman, Central Mississippi

8    Correctional Facility and South Mississippi Correctional

9    Facility.  The contract with GTL was renewed multiple times and

10   was in effect throughout the time covered by this criminal

11   information.

12         In 2011 the defendant, Sam Waggoner, became a paid

13   consultant for GTL.  Shortly after Waggoner became a consultant

14   for GTL, Waggoner began paying Epps kickbacks from a portion of

15   Waggoner's consulting salary from GTL.  These kickbacks were

16   paid by Waggoner in order to curry favor with Epps for the

17   purpose of influencing Epps' decisions regarding GTL and its

18   contract with MDOC.

19         The evidence would show that both Waggoner and Epps

20   had a financial incentive to ensure that GTL receive as much

21   money as possible from its MDOC contract.  As compensation from

22   GTL, Waggoner received 5 percent of GTL's monthly revenue from

23   the MDOC contract.

24         Waggoner would withhold 30 percent of his monthly pay

25   from GTL to cover his tax liability and he would give Epps half

1   of the remaining money from GTL as a kickback each month.   At

2   various times Waggoner paid Epps as much as $3,400 a month.

3   Waggoner made these cash payments to Epps at various locations,

4   including at Epps' home in Flowood, Mississippi.

5           Waggoner's total income from GTL as its consultant was

6   in excess of the $5,000 threshold requirement for Title 18,

7   United States Code, Section 666.

8           Evidence in the form of wiretapped conversations

9   between Epps and Waggoner would show that during the time

10  period Waggoner was paying Epps, Waggoner routinely discussed

11  with Epps the need to expand the telecommunication services GTL

12  was providing to MDOC.

13          For example, Waggoner lobbied Epps to allow GTL to

14  provide video visitation and communication services between

15  inmates and their visitors.  This service would have allowed

16  friends and family members to visit with inmates over

17  Internet-based video feeds instead of requiring travel to the

18  respective prisons where the inmates were housed.

19          This service like the traditional phone service

20  already provided by GTL would have been offered to inmates and

21  to their friends and families at a cost, potentially increasing

22  the monthly revenue of GTL which would have in turn increased

23  the monthly pay of Waggoner and the monthly kickback he was

24  paying to Epps.

25          Waggoner explained to Epps that he believed the video

services would increase the amount of money Waggoner and Epps

received each month.  Epps and Waggoner discussed justifying

this new service as a way to decrease the instances of the

introduction of contraband into MDOC facilities.

The evidence would show at least three specific

instances of Waggoner paying a cash bribe or kickback to Epps.

These occasions were sometime in or about April of 2014

Waggoner met Epps at a hotel in Natchez where Waggoner

delivered a bottle of Jack Daniels and about $2,400 in cash to

Epps from the money Waggoner was paid by GTL.

On or about July 30th, 2014, and again on or about

August 26 of 2014 Waggoner paid Epps cash kickbacks from the

money Waggoner was paid by GTL.  The evidence would show that

these events and circumstances occurred in whole or in part

within the Southern District of Mississippi.

THE COURT:  Mr. Waggoner, did you hear what

Mr. Gilbert had to say?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you disagree with anything that he

said?

THE DEFENDANT:  No, your Honor.

THE COURT:  So, Mr. Waggoner, let me now have you

express in your own words why you are guilty of the offense

that's charged in the criminal information.  How well did you

know Christopher Epps?

```
 1            THE DEFENDANT:  What was the question about Epps?

 2            THE COURT:  How well did you know him?

 3            THE DEFENDANT:  I saw him once a month.  We didn't go

 4    out to dinner or anything like that.  I knew him.  I've known

 5    him a long time, 20 years probably, since he's been with the

 6    DOC.

 7            THE COURT:  And did you ever work for MDOC?

 8            THE DEFENDANT:  No.  No, your Honor.

 9            THE COURT:  So how did you come to know Mr. Epps?

10            THE DEFENDANT:  I guess associations, sir, different

11    meetings, state meetings, sheriffs' meetings, national

12    meetings.

13            THE COURT:  Did you know him when you held public

14    office?

15            THE DEFENDANT:  That wasn't me.

16            THE COURT:  Okay.

17            THE DEFENDANT:  That was my cousin.

18            THE COURT:  Okay.  Well, let me ask you then, did you

19    know him when your cousin held public office?

20            THE DEFENDANT:  Do I know him?

21            THE COURT:  Did you know him then?

22            THE DEFENDANT:  Sam W. Waggoner?

23            THE COURT:  No, no.  Did you know Mr. Epps during that

24    time period?

25            THE DEFENDANT:  Yes.  Yes, your Honor.
```

1          THE COURT:  And when you were working for GTL, what

2     was your position with GTL?

3          THE DEFENDANT:  Liaison between the Mississippi

4     Department of Corrections.

5          THE COURT:  And how long did you work for GTL?

6          THE DEFENDANT:  I've worked with them around 20 years,

7     23 years probably.  I did until last year.

8          THE COURT:  All right.  And who set up this financial

9     arrangement you had with GTL to be paid 5 percent of contract

10    price?

11         THE DEFENDANT:  Robert Orso with GTL and the

12    department of corrections.  He's the regional manager.

13         THE COURT:  All right.  And with regard to this scheme

14    with Christopher Epps, was it your idea or his idea?

15         THE DEFENDANT:  It was his idea, sir.

16         THE COURT:  And who made the determination as to how

17    much or what percentage he would get out of the deal?

18         THE DEFENDANT:  A mutual agreement I guess it was.

19         THE COURT:  All right.  And how exactly did it work

20    for you to be able to get that money?

21         THE DEFENDANT:  I would get a check from GTL and I

22    would take the 30 percent and then half that and then give the

23    other half to Mr. Epps.

24         THE COURT:  And this 30 percent would be applied

25    against what?

1          THE DEFENDANT:  For taxes, reduction for taxes.  I had

2     to pay taxes.

3          THE COURT:  GTL would give you that money?

4          THE DEFENDANT:  Tax money?

5          THE COURT:  Who would give you the sum of money that

6     you would utilize to pass on to Epps?

7          THE DEFENDANT:  GTL would give me a 5 percent

8     commission each month.

9          THE COURT:  And would you take part of that money and

10    give to Mr. Epps?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And how did you ensure that you would have

13    moneys over and beyond that which you normally should get?

14    What I'm asking is is that the contract prices you had with the

15    department of corrections, who negotiated that contract price?

16         THE DEFENDANT:  The actual GTL contract with the

17    department of corrections?

18         THE COURT:  That's right.

19         THE DEFENDANT:  I think it was three or four agencies

20    within the department of corrections and they put it out for

21    bid.

22         THE COURT:  And was the bid a lawful bid?

23         THE DEFENDANT:  GTL's the largest inmate telephone

24    company in the United States.  So I'm sure it was.  I didn't

25    see that.  I wasn't involved in it.

1    THE COURT:  I need you to explain why you had to bribe

2    Christopher Epps on this matter.

3        THE DEFENDANT:  He wanted some of the money; and if I

4    didn't do it, I would lose some of my contracts and business in

5    my major business.

6        THE COURT:  So what you're telling me then is that the

7    bid that GTL made for the business was a legitimate deal.

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  You're telling me then that the profits

10   derived were legitimate profits.

11       THE DEFENDANT:  Legitimate profits.

12       THE COURT:  And you're telling me that the amount of

13   money that was paid to you on commission --

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  -- was a legitimate amount of money.

16       THE DEFENDANT:  Yes, your Honor.

17       THE COURT:  But you're telling me that unless you paid

18   part of your commission to Christopher Epps, that he threatened

19   to do something else.

20       THE DEFENDANT:  I take full responsibility for what I

21   did.  I don't know what his thinking was.

22       THE COURT:  All right.  But at the time that you paid

23   him you paid him under what impression?  Did you pay him under

24   threat or just voluntarily give him the money?

25       THE DEFENDANT:  My main business was CCI, and I did

1  business with the county, city jails in Mississippi.  And if

2  something would come up, they need -- a sheriff might ask me

3  for -- talk to Mr. Epps when I see him, for a cook in their

4  jail or a mechanic, and I would do that for the counties,

5  cities, and he would try to help.

6        THE COURT:  I still don't fully understand.  Why would

7  you need to bribe him if you had this money coming to you

8  lawfully?

9        THE DEFENDANT:  I did.

10        THE COURT:  So then why would you need to bribe him?

11        THE DEFENDANT:  He -- he told me to.  He -- he said he

12  wanted half of my commission each month.  But, again, I do take

13  responsibility --

14        THE COURT:  I understand.

15        THE DEFENDANT:  -- of doing that.

16        THE COURT:  But why would you pay him?  What would

17  happen if you didn't pay him?

18        THE DEFENDANT:  He would call a sheriff, say Leake

19  County Sheriff Waggoner, *Sheriff Waggoner, I want you to change*

20  *inmate phone companies or I will pull my state inmates out.*

21  And that was the main reason, something like that would happen.

22        THE COURT:  Well, did you have conversations directly

23  with him whereby he made such demands or threats?

24        THE DEFENDANT:  No.  No, your Honor.  I'd just -- I'd

25  seen what he had done to other people that said no.

1          THE COURT:  All right.  So then you're saying that he

2     told you how much money he wanted.

3          THE DEFENDANT:  He said he wanted to split it.  And

4     then I told him I was going to take taxes out and then split

5     that in half.  And we decided on that together.

6          THE COURT:  Well, then was your commission still

7     profitable for you after you did that, after you split it?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  So what was your commission per year from

10    this engagement?

11         THE DEFENDANT:  108,000 -- 106,000 a year I think.

12         THE COURT:  So, now, were you splitting 106 or were

13    you splitting 212?  How did it work?

14         THE DEFENDANT:  106 minus -- times 30 percent and

15    subtract it by -- divide it by two.

16         THE COURT:  Okay.  Do that again.  100 and what now?

17         THE DEFENDANT:  $106,000.

18         THE COURT:  106.  Okay.  Now what?

19         THE DEFENDANT:  30 percent for taxes.

20         THE COURT:  30 percent of that.

21         THE DEFENDANT:  Then --

22         THE COURT:  One second.

23         THE DEFENDANT:  Yes, sir.

24      (PAUSE)

25         THE COURT:  Okay.  Taxes, what did you do with the

1    taxes?  That would come off of that?

2           THE DEFENDANT:  Yes.  My accountant would do all that.

3           THE COURT:  Okay.  Then what?

4           THE DEFENDANT:  Then we would divide the remainder by

5    two.

6           THE COURT:  Okay.  After you subtract those taxes,

7    then the rest would be divided by two.

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Okay.  I come up with something north of

10   $35,000.  That's about right?  I just made some quick

11   calculations.

12      (COUNSEL AND DEFENDANT CONFERRED)

13          THE DEFENDANT:  It would be $54,000.

14          THE COURT:  54,000?

15          THE DEFENDANT:  108 is what I've got on this sheet and

16   we divided that.

17          THE COURT:  You said 106.  It's 108?

18          THE DEFENDANT:  108.

19          THE COURT:  Okay.

20          THE DEFENDANT:  For -- what year is this?

21          THE COURT:  108.  We're talking about one year.  Are

22   we talking about one year?

23          THE DEFENDANT:  Well, we -- we had this

24   conversation -- I don't know how to answer that.

25      (COUNSEL AND DEFENDANT CONFERRED)

1          MR. BAIN:  Your Honor, the numbers that he's presented

2    to me, there's a total of 309,000 for a period of a little over

3    three years.  And I'd be more than happy to submit this to the

4    court if you'd like to see his --

5          THE COURT:  Well, over three years.  You're saying in

6    a three-year period --

7          MR. BAIN:  $309,582.

8          THE COURT:  Okay.  And then you took one third for

9    taxes.

10          THE DEFENDANT:  30 percent.

11          THE COURT:  30 percent.  All right.

12          THE DEFENDANT:  I know what it is.  They have -- the

13    accountant included the CCI business along with this percentage

14    for the consultant together, and so -- I just saw that, your

15    Honor.

16          THE COURT:  All right.  So then at the end of the

17    calculations, your take-home over these three years would have

18    been about what?

19          THE DEFENDANT:  It would have been the same thing,

20    108,000.

21          THE COURT:  For the three-year period?

22          THE DEFENDANT:  Yes.  But they're also including my

23    other business, CCI, in it.  So it would make the total larger.

24    And I don't know how they came up with that.  But I agree with

25    whatever they say, though.

1        THE COURT:  Over that three-year period, then about

2   how much would Epps get?

3        THE DEFENDANT:  He -- I did it all -- total was 300

4   and -- 2011 it was 61,000 for -- that was not a full year.  In

5   '12 it was one hundred and five four hundred.  In '13 it was

6   one hundred and thirteen.  In 2014 until August -- so that's

7   three hundred and nine fifty-eight times 30.  And so we had

8   216,700 net.

9        THE COURT:  For yourself.

10       THE DEFENDANT:  Gross net and then divide by two, net,

11   108,353.70.

12       THE COURT:  So then Chris Epps over that three-year

13   period would have gotten how much?

14       THE DEFENDANT:  108,353.70.

15       THE COURT:  And what were you directed to do with his

16   money besides -- I mean, give it to him, but how would you --

17   how did you give it to him?

18       THE DEFENDANT:  It would be cash, sir.

19       THE COURT:  All right.  And were you directed to put

20   it in his hand or put it in any other form where he could pick

21   it up?  How were you delivering the money to him?

22       THE DEFENDANT:  When I was at his house, I'd just put

23   it on the counter by him.  And then if we're having lunch, I

24   would hand it to him.

25       THE COURT:  All right.  Did you have to have anybody

 1  else involved in this scheme with you?

 2          THE DEFENDANT:  No, your Honor.

 3          THE COURT:  Okay.  Thank you.

 4          THE DEFENDANT:  Yes, sir.

 5          THE COURT:  So then when you gave him this money, you

 6  understood you were violating the law?

 7          THE DEFENDANT:  Yes, your Honor.

 8          THE COURT:  And when you discussed all these matters

 9  with your lawyer, are you satisfied that you have no defense to

10  that conduct?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  So then with regard to the charge against

13  you contained in the criminal information, how do you plead,

14  guilty or not guilty?

15          THE DEFENDANT:  Guilty, your Honor.

16          THE COURT:  Mr. Waggoner, since you acknowledge

17  you're, in fact, guilty as charged in the criminal information,

18  since you know your rights to a trial, since you know what the

19  maximum possible punishment is and since you are voluntarily

20  pleading guilty, I will accept your plea of guilty as to the

21  single count of the criminal information and I hereby enter a

22  judgment of guilty against you as to that charge.  Twana.

23          THE CLERK:  November 5th.

24          THE COURT:  November 5.  I'm going to sentence you on

25  November 5, 2015, here in this courtroom.  That's November 5,

1    2015.  9:00, Twana, 9:30?

2              THE CLERK:  9:30.

3              THE COURT:  At 9:30 a.m. here in this courtroom.  Now,

4    I'm going to base my sentence on information contained in the

5    presentence report.  This report will be very important to you,

6    obviously.  So, then, you have to review it thoroughly before

7    you come back here for sentencing.

8              The probation officer will need to talk to you about a

9    number of matters that will be included within the presentence

10   investigation report.  You should freely talk to the probation

11   officer; but if the probation officer asks you to provide

12   information on any matters that would incriminate you on any of

13   the subjects, you have the right not to answer.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  You also have the right to have Mr. Bain,

17   your attorney, present with you during the entire time of the

18   interview, and you can then profit by his advice about these

19   questions.  Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Now, are you telling me that you're going

22   to read each and every line in that presentence investigation

23   report?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Now, be sure that you do, because I will.

1   And there might be some things in there that are unfavorable to

2   you that shouldn't be in there.

3          Now, if there are such, then Mr. Bain is going to file

4   a motion with the court asking the court to strike those

5   matters but only after he has met with the probation officer

6   and tried to resolve the matter informally.  If he can't

7   resolve it informally, then he can file a motion with the

8   court.  Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And then I will rule on that before I

11   sentence you.  Do you understand that too?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So you're telling me you're going to read

14   this report thoroughly?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And then discuss it with your lawyer.

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Now, what is the defendant's liberty

19   status?

20          MR. LaMARCA:  Your Honor, the defendant is on an

21   unsecured bond, your Honor.

22          THE COURT:  And is there any objection to his

23   remaining on an unsecured bond?

24          MR. LaMARCA:  No objection.

25          THE COURT:  And, Mr. Bain, I presume then you're

1    making such a request that your client be allowed to remain

2    free on that unsecured bond.

3              MR. BAIN:  Yes, your Honor.

4              THE COURT:  Mr. Waggoner, I'm going to allow you to

5    remain free under that same bond, under the same conditions and

6    restrictions in that bond.  If you violate any of those terms,

7    then you'll be brought back here.  Do you understand?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And at that time I would have to decide

10   whether to incarcerate you between then and the time of

11   sentencing.  Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Furthermore, I have to be assured at this

14   point that you're going to show up on the date that I just

15   mentioned.  Will you show up?

16             THE DEFENDANT:  Early.

17             THE COURT:  All right.  And, next, that you are not

18   going to commit any crimes whatsoever.

19             THE DEFENDANT:  I swear to that.

20             THE COURT:  All right, then.  Now, you have been

21   convicted of a felony.  A person convicted of a felony cannot

22   own or possess any kind of firearm.  The person can't use a

23   firearm for any reason, not for hunting, protection or even

24   gun-collecting.  So if you own or have possession of a firearm,

25   from this point on you would be acting illegally.  Do you

1    understand that?

2            THE DEFENDANT:  I have some in my home now.  How can I

3    get them out?  My friend here is going to take them.

4            THE COURT:  Okay.

5            THE DEFENDANT:  Can I do it today or tomorrow?  What

6    do you recommend?

7            THE COURT:  He can do it as fast as possible

8    because --

9            THE DEFENDANT:  They're in Carthage.

10           THE COURT:  Okay.  From this point on you cannot own

11   or possess --

12           THE DEFENDANT:  Okay.

13           THE COURT:  -- any firearms.

14           THE DEFENDANT:  Okay.

15           THE COURT:  And you cannot have constructive

16   possession nor actual possession.

17           THE DEFENDANT:  I understand.

18           THE COURT:  Now, let me explain -- well, let me

19   explain this definition of them to be sure.

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Actual possession is where you have the

22   firearm on your person, in your hand.

23           THE DEFENDANT:  Okay.

24           THE COURT:  Constructive possession is having an item

25   such as a firearm in a place over which you have control from

```
 1    which you may obtain the firearm.

 2              THE DEFENDANT:  All right.

 3              THE COURT:  So you can't have it in your house, any

 4    property you own, in your car, et cetera.  You cannot have it

 5    in any place over which you have control from which you may

 6    readily obtain the firearm.  Do you understand that?

 7              THE DEFENDANT:  Very well, sir.

 8              THE COURT:  Now, a firearm is a firearm whether it's

 9    loaded or not.  Do you understand that?

10              THE DEFENDANT:  What was that?

11              THE COURT:  A firearm is a firearm no matter whether

12    it is loaded or not.

13              THE DEFENDANT:  Oh.

14              THE COURT:  Do you understand that?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Doesn't matter whether it's loaded.  If

17    it's a firearm capable of firing a bullet, it's a firearm.  Do

18    you understand that?  As long as it's capable of shooting a

19    bullet, it's a firearm.

20              THE DEFENDANT:  Would a BB gun or a pellet gun be

21    included in that?

22              THE COURT:  It's not a bullet and --

23              THE DEFENDANT:  Oh, pellet.  It's not a bullet.

24              THE COURT:  It's just a pellet.

25              THE DEFENDANT:  It's not a -- it doesn't have powder
```

1    in it, no.

2         THE COURT:  That's right.  But, now, you need to talk

3    to your counsel and be sure you understand all of the different

4    definitions because this definition would also include the

5    frame or receiver of a firearm.  It would also include

6    explosives and also include other matters.  What am I thinking

7    about?  There's something else that's a firearm.

8         MR. LaMARCA:  Ammunition.

9         THE COURT:  Ammunition.  That's what I was -- that's

10   what I was thinking about previously.  Thank you.  It also

11   includes ammunition.

12        THE DEFENDANT:  Okay.

13        THE COURT:  Do you understand that too?  So if you

14   have any of those items in your home or car or in a place over

15   which you have control from which you may readily obtain the

16   item, you'd be in violation of this.

17        Now, finally, this prohibition about having a firearm

18   will last for the rest of your life.  Now, listen to me on this

19   one.

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  For the rest of your life.  Some state

22   laws have a law similar to this; but under those particular

23   state laws, as soon as a person finishes serving his sentence

24   and is finished with probation or supervised release the

25   individual can then take possession of -- or own a firearm

1  under that state law, not federal law, but under that state

2  law.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  But here we're talking about federal law.

5  And under federal law this prohibition about owning a firearm

6  will last for the rest of your life.  Do you understand that

7  now?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And for that is a strict punishment,

10  because if the prosecution discovers that you own or possess a

11  firearm, then the prosecution will charge you.  And the penalty

12  is a strict penalty that includes incarceration.  Do you

13  understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Any questions about anything I've said?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Mr. Bain, any questions?

18          MR. BAIN:  No, your Honor.

19          THE COURT:  Let me turn to Mr. LaMarca.  Mr. LaMarca,

20  any other matters that need to come before me?

21          MR. LaMARCA:  Yes, your Honor.  We do have to submit

22  to the court an agreed preliminary order of forfeiture

23  regarding the $200,000 money judgment that's been executed by

24  the defendant, the defense's lawyer -- or the defendant's

25  lawyer I should say and the government, your Honor.

```
 1              THE COURT:  Mr. Waggoner, is that correct, that you
 2    executed that document?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Do you understand what it says?
 5              THE DEFENDANT:  Yes, sir.
 6              THE COURT:  And did you sign it knowingly,
 7    intelligently?
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  All right.  Mr. Bain, are you satisfied
10    your client understood his rights before he signed that
11    document?
12              MR. BAIN:  Yes, your Honor.
13              THE COURT:  In that case then the court will accept
14    the document and file it after the court has signed it.  Now,
15    any other matters from the prosecution?
16              MR. LaMARCA:  No, your Honor.
17              THE COURT:  Any other matters from the defense?
18              MR. BAIN:  No, your Honor.
19              THE COURT:  All right, then.  I'll see you all back
20    here on the date announced for sentencing.
21              MR. BAIN:  Thank you, your Honor.
22              THE COURT:  Y'all can be excused.
23              MR. GILBERT:  Thank you, your Honor.
24              MR. LaMARCA:  Thank you, your Honor.
25         (PROCEEDINGS CONCLUDED)
```

CERTIFICATE OF REPORTER


        I, MARY VIRGINIA "Gina" MORRIS, Official Court

Reporter, United States District Court, Southern District of

Mississippi, do hereby certify that the above and foregoing

pages contain a full, true and correct transcript of the

proceedings had in the aforenamed case at the time and

place indicated, which proceedings were recorded by me to

the best of my skill and ability.

        I certify that the transcript fees and format

comply with those prescribed by the Court and Judicial

Conference of the United States.

        This the 22nd day of August, 2015.


                    s/ Gina Morris
                    U.S. DISTRICT COURT REPORTER